High Court of American Samoa

June 14, 1988

REES, Chief Justice, and KRUSE, Associate Justice:

As many of you already know, we badly need a new way to deal with guardianships of the estates of minors and other legally incompetent persons.

The Development Bank, which formerly served as guardian of the estates of nearly all such persons in the Territory, does not wish to take on any new guardianships.

The only alternative currently in use, in which a parent or other guardian is ordered to hold funds in a trust account from which withdrawals may be made only with permission of the Court and to make periodic reports to the Court, has proven to be a disaster. A recent review of thirty or forty cases in which such orders had been made turned up almost no cases in which the guardians had fully complied with the Court's order. More often the guardian had spent the money within a few months (sometimes within a few days) of receiving it, usually on things the guardian believed would benefit the child by benefitting the whole family.

144

Several attorneys of record in such cases have expressed surprise and dismay at the possibility that they might be held responsible for knowing whether their clients have complied with the Court's orders, or even for knowing how to contact their clients when compliance has not occurred. Regardless of where the responsibility currently resides, it seems obvious that this is an unrewarding activity for attorneys and in the vast majority of cases can be done without an attorney.

We propose, without much enthusiasm but because extensive discussion among the Justices and several attorneys has yielded no better idea, that funds received by minors and other incompetent persons in the future be deposited directly into the registry of the Court. Such funds would be handled according to the following procedures:

1) The Clerk would put all such funds into an interest-bearing account or accounts, and would credit such interest to the account of the beneficiary.

2) No trusteeship fees would be charged; the administrative work would be absorbed into the general budget of the Court.

3) Disbursements would be requested of the Clerk, either in writing or by means of a personal visit from the guardian of record during business hours, and approved or disapproved by one of the Justices.

4) The parent or other petitioner would remain the legal guardian of record, but would be absolved of responsibility for any funds deposited with the Court. The legal guardian would not be required to make periodic reports concerning funds deposited with the Court, but would receive a copy of an annual report prepared by the Clerk and approved by a Justice.

5) Except in extraordinary cases requiring the continued services of an attorney, the Court would freely grant motions by attorneys to withdraw as counsel of record in guardianship cases.

6) These procedures are suggested to attorneys only as an option that should in most cases make life simpler for guardians, beneficiaries,

145

attorneys, and judges. Any party remains free in any case to petition for a guardianship in which funds are kept elsewhere than in the registry of the Court. In light of past experience with private guardianships, however, the Court may require bonding and/or the continued involvement of the attorney to ensure compliance with its orders.

7) These suggested procedures obviously do not affect private guardianships that already exist. Insofar, however, as private guardians and their attorneys desire to convert to such an arrangement in order to absolve themselves of continuing responsibility for reporting and compliance, motions for the deposit of current guardianship funds into the registry of the Court will be freely granted.

We would appreciate your comments and suggestions on this and related matters.